# AWARD / CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) ▷ RATING

PAGE 1 OF PAGES 15 ** Va

2. CONTRACT (Proc. Inst. Ident.) NO. DACA87-91-C-0019

3. EFFECTIVE DATE 02/07/91

4. REQUISITION/PURCHASE REQUEST/PROJECT NO. W31RY0-8312-0003 / SS

5. ISSUED BY CODE 2001

US ARMY ENG. DIV., HUNTSVILLE
ATTN: CEHND-CT-A
PO Box 1600
Huntsville, AL 35807-4301

6. ADMINISTERED BY (If other than Item 5) CODE 2028

US ARMY CORPS OF ENGINEERS
HONOLULU DISTRICT
ATTN: CEPOH-DD
FORT SHAFTER, HI 96858

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)

CO-ENERGY GROUP
725 ARIZONA AVENUE
SUITE 206
SANTA MONICA , CA 90401-

CODE 00003598 FACILITY CODE

8. DELIVERY ☐ FOB ORIGIN ☒ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT 00.000%00 Net 030

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ITEM 12

11. SHIP TO/MARK FOR CODE EMPTY

12. PAYMENT WILL BE MADE BY CODE EMPTY

TO BE ADDED BY THE ADMINISTERING OFFICE.

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:

☐ 10 U.S.C. 2304(c)( ) ☐ 41 U.S.C. 253 (c)( )

14. ACCOUNTING AND APPROPRIATION DATA

See attached Schedule(s)

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|

Confirming negotiations concluded on 1 Feb 91 and contractor's best and final offer and revisions thereto, this document constitutes award of services described in Section C of solicitation DACA87-89-R-0046 for Shared Energy Savings Program at Aliamanu Family Housing Area, Honolulu, HI. Schedules B-1, B-2 and B-3; Service Wage Determination 86-242 (Rev. 9) and General Wage Decision HI90-1 in Section J; FAR 52.249-0002 and 52.249-0002, Alternate I in Section I, and local clause 52.249-4010 in Section H are incorporated and made a part of this contract. The period of performance is also incorporated in Section F. Section C, Paragraph 15 is incorporated and made a part of this contract.

15G. TOTAL AMOUNT OF CONTRACT ▷ $ 0.00

## 16. TABLE OF CONTENTS



| (X) | SEC | DESCRIPTION | PAGE (S) | (X) | SEC | DESCRIPTION | PAGE (S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1 | X | I | CONTRACT CLAUSES | 91 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 4 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 15 | X | J | List of Attachments | 2 |
| X | D | PACKAGING AND MARKING | 1 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 3 | X | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | 20 |
| X | F | DELIVERIES OR PERFORMANCE | 4 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 6 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 13 | | M | EVALUATION FACTORS FOR AWARD | |



CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 1 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award / contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award / contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)

20A. NAME OF CONTRACTING OFFICER
James W. Reynolds (205)955-5660

19B. NAME OF CONTRACTOR
BY ______ (Signature of person authorized to sign)

19C. DATE SIGNED

20B. UNITED STATES OF AMERICA
BY ______ (Signature of Contracting Officer)

20C. DATE SIGNED

NSN 7540-01-152-8069
PREVIOUS EDITION UNUSABLE

26-107

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA
FAR (48 CFR) 53.214(a)

EXHIBIT A - EXCERPTED CONTRACT DOCUMENTS 1

(End of clause)

I.74 52.246-0025 LIMITATION OF LIABILITY--SERVICES (APR 1984)

(a) Except as provided in paragraphs (b) and (c) below, and except to the extent that the Contractor is expressly responsible under this contract for deficiencies in the services required to be performed under it (including any materials furnished in conjunction with those services), the Contractor shall not be liable for loss of or damage to property of the Government that (1) occurs after Government acceptance of services performed under this contract, and (2) results from any defects or deficiencies in the services performed or materials furnished.

(b) The limitation of liability under paragraph (a) above shall not apply when a defect or deficiency in, or the Government's acceptance of, services performed or materials furnished results from willful misconduct or lack of good faith on the part of any of the Contractor's managerial personnel. The term "Contractor's managerial personnel," as used in this clause, means the Contractor's directors, officers, and any of the Contractor's managers, superintendents, or equivalent representatives who have supervision or direction of--

(1) All or substantially all of the Contractor's business;

(2) All or substantially all of the Contractor's operations at any one plant, laboratory, or separate location at which the contract is being performed; or

(3) A separate and complete major industrial operation connected with the performance of this contract.

(c) If the Contractor carries insurance, or has established a reserve for self-insurance, covering liability for loss or damage suffered by the Government through the Contractor's performance of services or furnishing of materials under this contract, the Contractor shall be liable to the Government, to the extent of such insurance or reserve, for loss of or damage to property of the Government occurring after Government acceptance of, and resulting from any defects and deficiencies in, services performed or materials furnished under this contract.

(d) The Contractor shall include this clause, including this paragraph (d), supplemented as necessary to reflect the relationship of the contracting parties, in all subcontracts over $25,000.

(End of clause)

(R 7-1912 1974 APR)

I.75 52.249-0002 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)

(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer

determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated, and (ii) the completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property related to this contract that is in the possession of the Contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (6) above; provided, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(c) After expiration of the plant clearance period as defined in Subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, of

termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary, before final settlement.

(d) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1 year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

(e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (e) or paragraph (f) below, exclusive of costs shown in subparagraph (f)(3) below, may not exceed the total contract price as reduced by (a) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be amended, and the Contractor paid the agreed amount. Paragraph (f) below shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(f) If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined by the Contracting Officer as follows, but without duplication of any amounts agreed on under paragraph (e) above:

(1) The contract price for completed supplies or services accepted by the Government (or sold or acquired under subparagraph (b)(9) above) not previously paid for, adjusted for any saving of freight and other charges.

(2) The total of--

(i) The costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto, but excluding any costs attributable to supplies or services paid or to be paid under subparagraph (f)(1) above;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the

terminated portion of the contract if not included in subdivision (i) above; and

(iii) A sum, as profit on subdivision (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(3) The reasonable costs of settlement of the work terminated, including-

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

(g) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (f) above, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(h) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(i) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d), (f), or (k), except that if the Contractor failed to submit the termination settlement proposal within the time provided in paragraph (d) or (k), and failed to request a time extension, there is no right of appeal. If the Contracting Officer has made a determination of the amount due under paragraph (d), (f), or (k), the Government shall pay the Contractor (1) the amount determined by the Contracting Officer if there is no right of appeal or if no timely appeal has been taken, or (2) the amount finally determined on an appeal.

(j) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the

Government.

(k) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(l)(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(m) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of clause)
(R 1-8.701)
(R 7-103.21(b) 1974 OCT)

I.76 52.249-0002 I TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)- ALTERNATE I (APR 1984)

(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a

Notice of Termination specifying the extent of termination and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated, and (ii) the completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property related to this contract that is in the possession of the Contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (6) above; provided, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(c) After expiration of the plant clearance period as defined in Subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, of termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may

request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary, before final settlement.

(d) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1 year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

(e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (e) or paragraph (f) below, exclusive of costs shown in subparagraph (f)(3) below, may not exceed the total contract price as reduced by (a) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be amended, and the Contractor paid the agreed amount. Paragraph (f) below shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(f) If the Contractor and Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under paragraph (e) above:

(1) For contract work performed before the effective date of termination, the total (without duplication of any items) of--

(i) The cost of this work;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (i) above; and

(iii) A sum, as profit on (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no

profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(2) The reasonable costs of settlement of the work terminated, including--

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

(g) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (f) above, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(h) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(i) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d), (f), or (k), except that if the Contractor failed to submit the termination settlement proposal within the time provided in paragraph (d) or (k), and failed to request a time extension, there is no right of appeal. If the Contracting Officer has made a determination of the amount due under paragraph (d), (f), or (k), the Government shall pay the Contractor (1) the amount determined by the Contracting Officer if there is no right of appeal or if no timely appeal has been taken, or (2) the amount finally determined on an appeal.

(j) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(k) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90

days from the effective date of termination unless extended in writing by the Contracting Officer.

(l)(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(m) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of clause)
(R 1-8.701)
(R 7-103.21(b) 1974 OCT)
(R 1.8-703)
(R 7-602.29(a) 1974 APR)

END OF SECTION I

ORIGINAL SF-30 W/SK
CEPOD-CT-C

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE | | | PAGE OF PAGES 1 \| 2 |
| 2. ~~AMENDMENT~~/MODIFCATION NO. ~~00~~0050 | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
| 6. ISSUED BY CODE<br>US Army Corps of Engineers<br>Building 230<br>Fort Shafter, Hawaii 96858-5440 | | 7. ADMINISTERED BY *(If other than Item 6)* CODE | CF:<br>~~FHRO OEB W/SK~~<br>FHRO FIELD W/SK-2<br>FHRO SPEC W/SK<br>FHRO OEB (PYMTS)<br>CEPOD-ET-TD W/SK<br>CEPOD PP-MD<br>[redacted]<br>CEPOD-RM-FA<br>CEPOD-LO-S |

| | | |
|---|---|---|
| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State & ZIP Code)*<br>Aliamanu Conservation Partners, L. P.<br>1850 C Aliamanu Driver, Bunker 27C<br>Honolulu, Hawaii 96818 | (X) | 9A. AMENDMENT OF SOLICITATION NO. |
| | | 9B. DATED *(SEE ITEM 11)* |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DACA87-91-C-0019 |
| | | 10B. DATE *(SEE ITEM 13)*<br>7 Feb 91 |
| CODE | FACILITY CODE | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
N/A

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>Section I Contract Clauses - I.70 "Changes", I.56 " Disputes, and Section H - H.28 SES Baseline Adjustments |
| | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return two copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible)*

( CI A91019-46 ) ( C1 )

a. The contract for Shared Energy Savings Program, Aliamanu Family Housing Area, Oahu, Hawaii is hereby modified to incorporate the Attached Amended Agreement in Principle, Agreed to and signed 31 May 1996 into the Contract.

(Continued on Page 2)

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. NAME AND TITLE OF SIGNER *(Type or print)*<br>Aliamanu Conservation Partners, L. P.<br>THOMAS W. MITCHELL<br>President | | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*<br>DAVID Y. KAM, Chief, Contracts Division<br>Contracting Officer | |
| 15B. CONTRACTOR/OFFEROR<br>[signature]<br>*(Signature of person authorized to sign)* | 15C. DATE SIGNED<br>2/23/98 | 16B. UNITED STATES OF AMERICA<br>BY [signature]<br>*(Signature of Contracting Officer)* | 16C. DATE SIGNED<br>27 Feb 98 |



NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

CONTINUATION SHEET



CONTRACT NO: DACA87-91-C-0019

Modification No. P00050 , Change Item No. A91019-46

Block 14 (Cont.)

b. CONTRACT SPECIFICATION: The contract specifications shall be revised as stated in the Amended Agreement in Principal and as stated below.

Section B shall be revised to replace SCHEDULE B-1 with the attached Revised Schedule B-1.

Section C shall be revised to add Paragraph 8.1.1 as follows:
"8.1.1 From February 15, 1996, the Contractor shall not be responsible for maintenance of the existing EMCS system that can cycle off the air conditioning systems and the domestic water heating systems. The Contractor shall shut off the EMCS at no cost or liability to the Government or the Contractor."

c. CONTRACT DRAWINGS: The Contract Drawings shall remain unchanged as a result of this change.

d. PRICE ADJUSTMENT: As a result of this modification, contract payments shall be made in accordance with the Amended Agreement in Principle signed May 31, 1996.

e. PERFORMANCE TIME: The performance period of the contract shall remain unchanged.

It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change ordered, and for all delays related thereto, and for performance of the change within the time frame stated.

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE

PAGE OF PAGES 1 | 3

2. ~~AMENDMENT~~/MODIFCATION NO. P00100

3. EFFECTIVE DATE See Block 16c

4. REQUISITION/PURCHASE REQ. NO.

5. PROJECT NO. *(If applicable)*

ORIGINAL SF-30 W/SK
CEPOH-CT-C
CF:
FSRO OEB W/SK
FSRO FIELD W/SK-2
FSRO SPEC W/SK
FSRO-OEB (PYMTS)
CEPOH-CO-Q W/SK
CEPOH-PP-M/MMC
CEPOH-RM-FA

6. ISSUED BY CODE

\rmy Corps of Engineers
.N: CEPOD-ET-CH (FHRO)
Building 230
Fort Shafter, Hawaii 96858-5440

7. ADMINISTERED BY *(If other than Item 6)* CODE

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State & ZIP Code)*

Aliamanu Conservation Partners, L.P.
1850 C Aliamanu Dr., Bunker 27C
Honolulu, HI 96818

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACT/ORDER NO. DACA87-91-C-0019

10B. DATE *(SEE ITEM 13)* 7 February 1991

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*

See Block 14, Paragraph b(3)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

x C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
Contract Clause I.70, "CHANGES", and I.56, "DISPUTES"

D. OTHER *(Specify type of modification and authority)*

E. IMPORTANT: Contractor ☐ is not, ☒ is ~~required~~ requested to sign this document and return 2 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible)*

( CI A91019-113 ) (C1)

a. The contract for Shared Energy Savings Program, Aliamanu Family Housing Area, Oahu, Hawaii, is hereby modified as follows:

(1) Incorporate the attached Agreement in Principle agreed to and signed on 25 November 1998, as an integral part of the Contract.

(Continued on Page 2)

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*
Aliamanu Conservation Partners, L.P.

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*
DAVID Y. KAM
CHIEF CONSTRUCTION CONTRACTS BRANCH

15B. CONTRACTOR/OFFEROR CEGALI, INC. GP
[signature] V.P.
(Signature of person authorized to sign)

15C. DATE SIGNED 2/4/99

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED 2/4/99

CONTINUATION SHEET



CONTRACT NO: DACA87-91-C-0019

Modification No. P00100 , Change Item No. A91019-113

Block 14 (Cont.)

(2) Reimburse the Contractor for maintenance and replacement of the electric hot water heaters at Aliamanu Military Reservation, as needed, effective 1 October 1998.

b. CONTRACT SPECIFICATION: The contract specifications shall be revised as stated in the Agreement in Principle signed 25 November 1998 and as stated below:

(1) Section C, Paragraph 10.0 "METERING" shall be modified to read as follows:

No new metering system will be required. Through May 31, 1996, the existing meter at the electrical substation will be used for the measurement of energy usage for the Contract.

(2) Section C, Paragraph 11.0 "BASIS OF PAYMENT TO THE CONTRACTOR," shall be modified by inserting after suparagraph 11.1 "Basis for Contract Billing," the following subparagraph:

11.1 Basis for Contract Billing and Payment Starting June 1, 1996. Billings for months beginning June 1, 1996, and thereafter, shall use agreed and fixed energy savings of 2.0 million kWh per month and demand savings of 4,500 kW. The "Baseline Formula" set forth in paragraph 12.0 of the Contract will not apply to billings and payments for months after May 1996.

(3) Section C, Paragraph 13.0 "MAINTENANCE BASELINE" does not apply after May 1996.

(4) Schedule B-1, Section B, of the Contract, shall be modified as follows:

"Percent to AMR" in years 12, 13, 14, 15 and two months in year 16 shall be changed from "30" to 27".

(5) Section C, Subparagraph 2.2.3.1 and Section H, Paragraph H.28 52.242-4144 "SES BASELINE ADJUSTMENTS" do not apply after May 1996.

(6) Section C, Paragraph 11.2 "PAYMENTS", on page C-12, add the following new subparagraph 11.2.9.

"11.2.9 Compensation for work to be performed under Item Nos. 2A, 2B and 2C, as identified in Section B, Schedule B-4, shall be paid for at the unit price, complete, in place, and ready for use, to include labor, materials, and all incidental items necessary to complete the work."

c. CONTRACT DRAWINGS: The contract drawings shall remain unchanged as a result of this change.

FINAL DECISION OF THE CONTRACTING OFFICER

Contract No. DACA87-91-C-0019
Shared Energy Savings Program
Aliamanu Family Housing Area, Oahu, Hawaii

TERMINATION SETTLEMENT DETERMINATION

INTRODUCTION

1) By Modification Number P00212 dated 12 August 2004 the Contractor was notified that, effective 30 September 2004, the contract was being terminated for the convenience of the Government and the Contractor was requested to provide its termination settlement proposal within one year from the effective date of the termination. The Contractor subsequently submitted a proposal and negotiations were conducted; however, the parties were unable to negotiate a bilateral termination settlement amount. During the settlement negotiations, the Contractor orally requested that the undersigned, as the Termination Contracting officer (TCO), issue a Contracting Officer's Final Decision (COFD) regarding the termination settlement amount. This COFD contains my determination of the appropriate termination settlement amount, and sets forth the basis for my unilateral determination.

2) Among other things, the Contractor contends that it is entitled to all of the payments that it already received under the contract, plus its termination expenses and settlement costs, as well as all of the remaining fixed payments that the Contractor would have received had the contract not been terminated for the convenience of the Government. The Government contends that the Contractor is not entitled to the fixed monthly payments the Contractor would have received had the contract not been terminated; and that the final contract price resulting from the termination should be based upon the Contractor's actual cost incurred prior to the effective date of the termination, as well as the Contractor's allowable, allocable, and reasonable termination and settlement cost incurred after the contract was terminated.

3) In order to arrive at my final decision, I reviewed pertinent provisions and clauses of the contract; several items of correspondence between the Contractor and the Honolulu Engineer District (HED), including the Contractor's proposal; the Defense Contract Audit Agency (DCAA) audit report concerning the Contractor's purported termination settlement proposal, various documents obtained from the Contractor during my personal review of the Contractor's records in Nevada; and various other Government-generated internal documents. Based upon my review, I have determined that as a result of the termination for the convenience of the Government, the final contract price should be definitized at $41,237,389; and since the Contractor has already received payments under the contract totaling $47,452,392, the Contractor needs to repay the Government the excess payment amount of $6,215,003, plus interest. Federal Acquistion Regulation (FAR) Part 49.112-1(g) addresses the effect of overpayment and how the interest shall be computed.

## FINDINGS OF FACT

The Contract:

4) Based upon full and open competition, on 11 February 1991, Contract No. DACA87-91-C-0019, Shared Energy Savings Program, Aliamanu Family Housing Area, Oahu, Hawaii was awarded to Co-Energy Group (CEG) (see Standard Form 26 executed by the Procurement Contracting Officer (PCO), Mr. James W. Reynolds at TAB C-1). At the time of award, CEG certified that it was a California Corporation, was not a Small Business, that its Tax Payer Identification Number (TIN) was 95-3930946, that its President was Mr. Robert Freeman, its Executive Vice President was Mr. Thomas Mitchell, and its Vice President was Mr. George Jones. After the contract was awarded, the contract was transferred to the United States Army Corps of Engineers, Honolulu Engineer District (HED) for administration, and payments under the contract were to be made by the United States Army Corps of Engineers, Pacific Ocean Division (POD).

5) The Contract required the Contractor to provide and install energy savings equipment, and to provide operating and maintenance services, at the Aliamanu Military Reservation (AMR) family housing complex in Honolulu, Hawaii, that would result in a reduction in AMR's monthly energy and maintenance expenditures. The energy savings equipment and services were to be provided by the Contractor, at the Contractor's expense, and the only payments that the Contractor would receive under the contract were to be based upon a pre-established percentage of the avoided energy and maintenance expenditures over a maximum term of fifteen (15) years[1], with a limitation that the amount paid to the Contractor for the maintenance savings could not exceed the amount paid for the energy savings[2].

6) At the time the contract was awarded, the AMR family housing complex consisted of 1,510 town house units, 1,090 apartment units, and support facilities including a Recreational Center with a swimming pool, a Shopette/Gas Station, a Burger King, a Chapel Annex, and Athletic Fields. The energy expenditure at AMR was to be reduced through the implementation of Contractor developed and proposed Energy Conversation Projects (ECP's), subject to the acceptance of the Contracting Officer. Since air conditioning was the largest energy consumption system at AMR, the Contractor was required to develop an ECP to modify or replace the existing air conditioning system, and the Contractor was required to investigate potential ECP's involving the replacement of the interior and exterior incandescent bulbs with fluorescent bulbs and improving attic ventilation. The Contractor included ECP's for these required items, as well as for other items, as part of its proposal for the contract, and the PCO accepted the Contractor's proposed ECP's through the award of the contract. Under the terms of the contract, after award of the contract the Contractor could propose additional ECP's to the Administrative Contracting Officer (ACO) for acceptance by the ACO.

[1] Section C, Paragraph 1.3 of the contract clearly stated a "maximum" duration of fifteen years, implying that the contract duration could be less than the stated maximum.

[2] Section C, Paragraph 1.4 of the contract stated that the monthly payments to the Contractor would consist of an energy savings component and a maintenance savings component (which could not exceed the amount paid for the energy savings component).

7) The contract contained several Contract Clauses that are relevant of this issue, including:

a) H.29, 52.249-4010, Termination for Convenience (TAB C-2);

b) I.14, 52.215-0001, Examination of Records by Comptroller General (APR 1984) (TAB C-3);

c) I.15, 52.215-0002, Audit - - Negotiation (DEC 1989) (TAB C-4);

d) I.16, 52.215-0022, Price Reduction for Defective Cost or Pricing Data (APR 1988) (TAB C-5);

e) I.28, 52.222-0008, Payrolls and Basic Records (FEB 1988) (TAB C-6);

f) I.48, 52.230-0003, Cost Accounting Standards (SEP 1987) (TAB C-7);

g) I.49, 52.230-0004, Administration of Cost Accounting Standards (SEP 1987) (TAB C-8);

h) I.50, 52.230-0005, Disclosure and Consistency of Cost Accounting Practices (SEP 1987) TAB C-9);

i) I.50, 52.230-0006, Consistency of Cost Accounting Practices (SEP 1987) (TAB C-10);

j) I.54, 52.232-0017, Interest (APR 1984) (TAB C-11);

k) I.56, 52.233-0001, Disputes (APR 1984) (TAB C-12);

l) I.69, 52.236-7000, Composition of Contractor (JAN 1965) (TAB C-13);

m) I.75, 52.249-0002, Termination for the Convenience of the Government (FIXED-PRICE) (APR 1984) (TAB C-14); and

n) I.76, 52.249-0002-I, Termination for the Convenience of the Government (FIXED-PRICE) (APR 1984) – Alternate I (APR 1984) (TAB C-15).

8) During the contract, several contract modifications were issued that are particularly relevant to the resolution of the termination and the establishment of the final price of the terminated contract. These relevant contract modifications are identified and briefly discussed in the following paragraphs:

a) Approximately eighteen (18) months after award of the contract, based upon CEG's written request (TAB C-16), by Modification No. P00009 (See TAB C-17) on 3 September 1992 the contract was novated from CEG to Cegali, Inc. (Cegali). At the time of the novation, CEG represented that Cegali was wholly owned by CEG; and Cegali represented that it was a California Corporation and that its President was Mr. Robert Freeman

b) Approximately three (3) years later, based upon Cegali's written request (TAB C-18), by Modification No. P00035 (See TAB C-19) on 23 March 1995 the contract was again novated, this time from Cegali, Inc. to the Aliamanu Conversation Partners L.P. (ACP). At