IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ALIAMANU CONSERVATION PARTNERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-134-C (Judge Braden) |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACTS

1. On February 11, 1991 the United States Army Engineers, Huntsville, Alabama awarded Contract No. DACA97-91-C-0019 to Co-Energy Group. App. Pg. 1 [Plaintiff's Appendix to its Motion for Partial Summary Judgment].

Response: Disagree. The United States Army Engineering Division, Huntsville, awarded Contract number DACA87-91-C-0019 for shared energy savings. App. Pg. 1.

2. The purpose of the contract was to "engage a contractor who will provide equipment and services at Aliamanu Military Reservation (AMR) family housing complex, Honolulu, Hawaii that shall result in a reduction in the energy expenditure." App. Pg. 4. The AMR family housing complex contained 1510 townhouse units and 1090 apartment units at the time of award. App. Pg. 4.

Response: Agree. Defendant avers that the purpose of the contract was to engage a contractor who would provide the equipment and services that would lead to a reduction in the energy and maintenance expenditures.

3. The contract required, as a minimum, the replacement of existing air conditioning and cooling equipment in the family housing units. App. Pg, 5.

Response: Disagree. The minimum requirement was for the contractor to implement certain Energy Conservation Projects (ECP's) established within the contract. These included the replacement or modification of the existing air conditioning and cooling equipment. App. Pg. 5.

4. The services and equipment used to reduce energy consumption and maintenance expenditures were provided by the contractor at its own expense. In return for this expenditure, the government promised to pay the contractor a portion of the government's avoided energy and maintenance expenditures for the term of the contract. App. Pg. 4.

Response: Agree.

5. After the installation and Government acceptance of the energy savings equipment the Government paid the contractor for its portion of the energy and maintenance savings. App. Pg. 7. Acceptance of the installation of the energy savings equipment was made on a joint final inspection of individual housing units. App. Pgs. 9-10. All construction was completed in July 1993. A punch lists on the completion of the installation of all equipment was issued by the government on May 18, 1993 and was corrected by Plaintiff and submitted to the Government on July 6, 1993. App. Pgs. 14-17.

Response: Agree.

6. The total contract term was 15 years. After completion and acceptance of the energy savings equipment payments were calculated each month for the remaining term of the contract. Complaint and Answer para. 22.

Response: Disagree with the proposed finding contained in the first sentence. The total contract term was for a maximum of 15 years. App. Pg. 4. Agree with the proposed finding contained in the second sentence. The energy savings payments started after the first energy

savings equipment was installed, not after all equipment was installed.

7. In 1998 the parties negotiated Modification P00100, effective June 1, 1996. This modification included an agreed upon monthly energy savings and also added three new payment items to the contract. These were: replace electric hot water heater during normal working hours, replace electric hot water heater for first floor apartment units after regular working hours, and replace electric hot water heaters for 2nd and 3rd floor apartment units after regular working hours. App. Pgs. 21-23

Response: Agree.

8. During performance the government executed bi-lateral modifications to the contract to add additional construction work. The parties negotiated the price for each item of work performed under these modifications. App. Pgs 25-28.

Response: Disagree. The modifications were mainly for additional maintenance work not covered under their routine services. For example, replacement of damaged or stolen equipment; cleaning of air conditioner ducts. App. Pgs. 25-28.

9. After the execution of Modification P00100 there were three items that could be included in Plaintiff's monthly invoice: (1) the amount of energy and maintenance savings achieved that month, (2) additional construction work performed that month under a modification, and (3) any of the three fixed -price line items from Modification P00100 ordered by the government that month.

Response: Agree.

10. The following process was used to make payment. Plaintiff would submit an invoice each month for energy and maintenance savings and owould also include any additional work at the agreed upon price and any fixed-price line item work performed. App. Pg. 30. The

Contracting Officer's Representative (COR) would review the invoice and make his own independent corrections. App. Pg. 30.

Response: Agree.

11. An Army Corps of Engineers standard ENG Form 93 entitle "PAYMENTS ESTIMATE-CONTRACT PERFORMANCE" was executed for each invoice. This form listed the period of performance covered, the work performed, the contract unit price, the amount for the work, and the total amount for each work item. App. Pg. 32, 34.

Response: Agree.

12. ENG Form 93 included a box entitled "APPROVAL FOR PAYMENT". In this box each ENG form 93 included the following certification:

> I certify that I have checked the quantities covered by this bill or estimate; that the work was actually performed; that the quantities are correct and consistent with all previous computations as actually checked; that the quantities and amounts are wholly consistent with the requirements of the contract or other instrument involved.

Response: Agree.

13. This certification was signed by a civil engineering technician and approved by the Contracting Officer's Representative. App. Pg. 32, 34.

Response: Agree.

14. The completed ENG form 93 was sent to the financial office and payment was made based upon the ENG Form 93 approval. App. Pgs. 34-36.

Response: Agree that this process was employed until changed and then payments were approved and processed through the CEFMS system.

15. The contract included clause E.1 entitled "INSPECTION OF CONSTRUCTION", Federal Acquisition Regulation (FAR) clause 52.246-12. That clause

provides in paragraph (I):

> Unless otherwise specified in the contract. The Government shall accept, as promptly as practicable after completion and acceptance, all work required by the contract or that portion of the work the Contracting Officer determines can be accepted separately. Acceptance shall be final and conclusive except for latent defects, fraud, gross mistakes amounting to fraud, or the Government's rights under any warrants or guarantees. App. 39-39.

Response: Agree. Defendant avers that the above statement is in subparagraph (i) vice (l) of the clause.

16. After completion and acceptance of the energy savings equipment, monthly payments were calculated each month for the remaining term of the contract. Complaint and Answer paragraph 22.

Response: Agree.

17. Every payment made to Plaintiff was certified as accepted on an ENG Form 93 prior to payment. App. Pgs. 41-46.

Response: Agree.

18. The government has not alleged latent defects, fraud, gross mistakes amounting to fraud, nor any right under any warranty or guarantee relating to the work accepted by the government.

Response: Agree.

19. On August 12, 2004 the contracting officer notified the plaintiff that the Contract was being terminated for the convenience of the government with an effective termination date of September 30, 2004. Exhibit A to Answer, pg. 1, para. 1.

Response: Agree.

20. Plaintiff claimed it was entitled to all the contract payments already received plus

settlement costs and termination costs, as well as the remaining monthly payments through the 15 year term of the contract. Exhibit A to Answer, pg. 1 para. 1.

Response: Agree that plaintiff made such a claim.

21. The contracting officer rejected payment of the remaining contract payments and determined that the contract price, amount to be paid to Plaintiff, should be based upon the costs of performance incurred prior to the termination of the contract.

Response: Disagree. The Contractor was informed that the final contract price resulting from the termination needed to be based upon the Contractor's actual cost incurred, before the effective date of the termination, plus an allowance for profit (provided the Contractor could demonstrate that it was in a profit position), plus the Contractor's allowable, allocable, and reasonable cost incurred, after the effective date of termination, associated with closing-out the contract and preparing the termination settlement proposal with the required Cost or Pricing Data. Exhibit A to Answer, pg. 1, paras. 52-55.

22. On June 20, 2005 Plaintiff submitted a settlement proposal based upon the total cost method as directed by the contracting officer. Exhibit A to Answer, pg. 7, para.15.

Response: Disagree. The contracting officer found that Plaintiff did not submit a settlement proposal that identified the Contractor's actual costs incurred during the performance of the contract and the proposal did not include the Contractor's Cost or Pricing Data (all relevant facts). Exhibit A to Answer, pg. 1, paras 38, 42.

23. The parties were not able to agree upon a settlement based upon the total cost method. For several months the parties disagreed upon the need for cost or pricing data to support the settlement proposal. The Contracting Officer's Final Decision chronicles the problems the parties had over the next few months. Exhibit A to Answer, pgs. 8-9, paras. 17-21.

Response: Agree to the extent supported by the contracting officer's final decision.

24. On October 31, 2005 ACP submitted a revisited settlement proposal in the amount of $7,641,772 based upon its original position that the contractor was owed the remaining monthly payments through the 15 year term of the contract because it had completed the installation of the energy savings equipment. Exhibit A to Answer, pgs. 9-10, paras. 22-23.

Response: Agree.

25. [No Proposed Finding]

26. In the Price Objective Memorandum (POM) prepared by the Contracting Officer on September 18, 2006 he determined that the Plaintiff had been overpaid during performance. He determined that the difference between what Plaintiff was paid and what he determined to be the amount owing Plaintiff on a cost basis was that Plaintiff owed the Government $683,140. Ap. Pg. 70.

Response: Agree.

27. The Price Negotiation Memorandum records that the Government Negotiator arrived at a proposed settlement amount that was overpaid to Plaintiff in the amount of $6,221,395 rather than the $683,140 established in the POM. App. Pg. 76. When this amount was rejected by Plaintiff, the Contracting Officer offered to settle for a lesser amount of $683,140. App. Pg. 76. Plaintiff rejected the alternate offer. App. Pg. 77.

Response: Agree.

28. After the parties were not able to reach settlement the Contracting Officer issued a decision making a unilateral termination settlement of the contract. In that decision he asserted a government claim to $6,215,003 for the alleged overpayment. Exhibit A to Answer pg. 23.

Response: Agree.

29. The modification incorporating the new contract price established by the Contracting Officer's Final Termination Decision States:

> The contractor has already received monthly payments totaling $46,379,724 for the work and services performed, or items delivered, under the completed portion of the contract. The Government confirms the right of the Contractor...to retain only $41,237,389 of this amount as the amount for which the Contractor is entitled in complete and final settlement of the contract. Exhibit B to Answer pg. 3 of 5.

Response: Agree.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Steven J. Gillingham
STEVEN J. GILLINGHAM.
Assistant Director

s/Armando A. Rodriguez-Feo
ARMANDO A. RODRIGUEZ-FEO
Trial Attorney
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
Department of Justice
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 307-3390
Fax: (202) 514-8624

August 6, 2008

Attorneys for Defendant

OF COUNSEL:
Jenny N. Masunaga
Assistant District Counsel
U.S. Army Corps of Engineers, CEPOH-OC
Fort Shafter, HI 96858

CERTIFICATE OF FILING

I hereby certify that on this 6th day of August, 2008, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Armando Rodriguez-Feo