**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ALIAMANU CONSERVATION PARTNERS, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | ) | No. 07-134-C<br>(Judge Braden) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING DEFENDANT'S CROSS COMPLAINT**

Plaintiff, Aliamanu Conservation Partners, through undersigned counsel of record, respectfully submits the following reply to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment (Opposition).

STATEMENT OF THE CASE

1. Plaintiff's Motion Challenges Legal Entitlement of Defendant's Counterclaim.

In its introductory paragraph of its Opposition, Defendant argues that Plaintiff disputes the quantum of defendant's counterclaim but not legal entitlement. From this it states that quantum is a matter of material fact that precludes the entry of partial summary judgment.

A reading of plaintiff's motion makes it clear that plaintiff is questioning defendant's legal entitlement to reverse and recover any of the payments that were made. Plaintiff's position is based upon the unqualified acceptance and payment of the work by defendant over a 13 year period. Defendant recognizes this when it states on page 4 of its opposition: "ACP's motion

only concerns whether the Government counterclaim may stand as a matter of law, but does not appear to dispute the amount in question."

2. There Are No Material Facts in Dispute.

The material facts relating to whether defendant's unqualified acceptance and payment of the various items of contract work at the agreed contract price are not in dispute. The contract was awarded to plaintiff on February 11, 1991. (PPFUF1)[1] Plaintiff would submit an invoice every month for energy and maintenance savings and any additional work performed. The contracting officer's representative would review the invoice and make his own independent corrections. (PPFUF 10)[2] The Government executed an ENG Form 93 for each invoice. (PPFUF 11) ENG Form 93 approved payment for the invoice and carried a certification that the work covered by the invoice was performed and that the quantities are correct. (PPFUF 12) The certification and approval for payment on the ENG Form 93 were signed by a civil engineering technician and the Contracting Officer's Representative. (PPFUF 13) Payment was made to plaintiff each month based upon the approval and acceptance of the work covered by the ENG Form 93. (PPFUF 14)

The contract included clause E.1 entitled "INSPECTION OF CONSTRUCTION". Subparagraph (i) of that clause states in part: "Acceptance shall be final and conclusive except

[1] Plaintiff made a typographical error in PPFUF 1 and stated the contract number as DACA97-91-C-0019 when it was actually DACA87-91-C-0019. Defendant agrees with the award date.

[2] Using the same acronyms as defendant, plaintiff's proposed findings of uncontroverted facts are PPFUF and defendant's are DPFUF. Defendant agreed with all of plaintiff's proposed findings of uncontroverted fact cited in this section of this reply. See, Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Facts.

for latent defects, fraud, gross mistakes amounting to fraud, or the Government's rights under any warrants or guarantees." (PPFUF 15)

Every payment made to plaintiff was certified as complete and accepted on an ENG Form 93. (PPFUF 17). Defendant has not alleged any latent defect, fraud, gross mistakes amounting to fraud, nor any right under any warranty or guarantee relating to the work accepted by the Government. (PPFUF 18)

On August 12, 2004 the Contracting Officer notified plaintiff that the contract was being terminated for convenience with an effective termination date of September 30, 2004. (PPFUF 19) This is almost exactly 13 years six months after the award of the contract.

During negotiations to settle the termination for convenience the Contracting Officer determined that the difference between what plaintiff was paid and the amount owed plaintiff on a cost basis was $683,140 and that this amount was owed by plaintiff to the Government. (PPFUF26) Later, during negotiations, the Government Negotiator claimed that plaintiff was overpaid by $6,221,395. (PPFUF 27)

When the parties could not agree to a settlement amount the Contracting Officer issued a unilateral determination that plaintiff owed the Government $6,215,003 for an alleged overpayment. (PPFUF 28) The modification incorporating the Contracting Officer's final decision into the contract provided:

> The Contractor has already received monthly payments totaling $46,379,724 for work and services performed, or items delivered, under the completed portion of the contract. The Government confirms the right of the Contractor . . . to retain only $41, 237,389 of this amount as the amount for which the Contractor is entitled in complete and final settlement of the contract. PPFUF 29)

STATEMENT OF THE ISSUES

Plaintiff agrees with defendant's statement of the legal issue involved in this motion: "Whether the Government's acceptance of ACP's non-terminated contract work bars a Government claim for overpayment asserted in its counterclaim as a matter of law." Defendant's statement of the issue at page 4 of its Opposition. Emphasis added. The issue presented relates to payments for work completed and accepted prior to termination. It does not relate to costs incurred on work that was incomplete and terminated.

ARGUMENT

1. The Government's Acceptance of ACP's *Non -Terminated Work* Bars it from Recovering Alleged Overpayments to ACP.

Defendant seems confused about whether it is talking about work completed and accepted before the termination for convenience or incomplete work terminated by the Government. All of the work accepted and payments made were for work completed before the effective date of the termination. This work was unaffected by the termination. Defendant recognizes this in its headings for its opposition brief where it consistently refers to acceptance of "non-terminated" work. However, when it discusses the Government's right to claim for overpayment because the payments made were greater then ACP's performance costs, it refers to principles applicable to incomplete terminated work and ignores those relating to completed and accepted contract work.

A. The Termination for Convenience Clause Does Not Allow the Government to Reject the Acceptance of Completed Work.

Defendant's reliance upon the Termination for Convenience clause in the contract, 48

C.F.R. 52.249-2 (Dex A pg. 2, clause I.75)[3], is misplaced. This clause is not in conflict with the legal principles that acceptance of completed work is final, but includes that principle as a key element.

Defendant makes the odd argument that the two cases cited by plaintiff are inapposite because both *Decker & Co. v. West*, 76 F.3d 1573 (Fed. Cir. 1996) and *United Technologies corp., Sirkorsky Aircraft Div. v. United States*, 27 Fed. Cl. 393 (1992) were cases dealing with Government claims of erroneous acceptance because of the discovery of defects after final acceptance and in the instant case there is no claim that any payments made to plaintiff were erroneous or that the payments were anything but correct at the time that they were made. Defendant does not explain how cases making mistaken acceptance final do not apply to a situation where there is no claim that the Government's acceptance was mistaken.

Defendant states in its opposition, page 7:

> The Acceptance and Inspection clause of these cases' contracts, was well as the clause contained in ACP's contract exist to prevent post-inspection defects from changing the contract price and protect contractors from being indefinitely liable for delivered goods: this clause is not meant to change the terms governing a termination for convenience.

Defendant's position is based upon a misunderstanding of the termination for convenience clause. It argues that allowing acceptance of completed contract work at the contract price would negate the purpose of the termination for convenince clause and make it obsolete. It makes this assertion based upon its reading of the termination for convenience as providing that "on a termination for convenience, the contractor is able to recover costs incurred

---

[3] Defendant's Exhibit A contains selected contract clauses. The applicable termination for convenience clause is I.75, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (Fixed-Price) (APR 1984). It covers pages 2 through 6 of Def. Exhibit A.

during performance of the contract, post-termination cost of the contract, and a sum of profit that the contracting officer considers fair and reasonable." Opposition pg. 7.

This is not what the termination for convenience clause provides for completed and accepted work. Fully consistent with the principles of finality of acceptance stated in *Decker, supra.* and *United Technologies, supra.*, the termination for convenience clause in the contract provides at 52.249-0002 (f) :

> (f) If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined by the Contracting Officer as follows, but without duplication of any amounts agreed on under subparagraph (e) above:
> (1) the contract price for completed supplies or services accepted by the Government (or sold or acquired under subparagraph (b)(9) above) not previously paid for, adjusted for any saving of freight and other charges.
> (2) The total of –
> (i) the costs *incurred in the performance of the work terminated* . . . (Emphasis added)
> Def. Ex. A pg. 4.

Therefore, the termination for convenience clause requires payment for work completed and accepted prior to the termination. Cost is an issue only for incomplete and terminated work. The termination for convenience clause does not authorize a contracting officer to reject work that was completed and accepted prior to the termination.

In citing *White Buffalo Construction, Inc. v. United States*, 52 Fed. Cl. 1 (2002) Defendant again confuses payment of cost for *terminated* work with payment for completed and accepted work. In footnote 5 of its Opposition, defendant alleges that "[U]pon the termination for convenience of a fixed price contract, the contract essentially becomes a cost reimbursement contract entitling the contractor to recover all allowable *costs incurred during performance of the terminated work*. . ." (Emphasis added)

Defendant's argument that subparagraph l(2) of the termination for convenience clause authorizes a demand for repayment of excess payments is misplaced for the same reason. See, Opposition page 5 and footnote 4.

Subparagraph l(2) has to be read in conjunction with subparagraph l(1) which states:

> The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the totals of these payments will not exceed the amount to which the Contractor will be entitled.

Therefore, the reference in l(2) that "[i]f the total payments exceed the amount fully determined to be due" is to payments "against costs incurred by the Contractor for the terminated portion of the contract" and not payment of the contract price for work completed and accepted by the Government.

B. The Government has no Inherent Right to Recover Overpayments That Were Not Paid Erroneously, Wrongfully, or Illegally.

Finally, defendant alleges that it is a well-settled principle that the Government has inherent authority to recover sums wrongfully, erroneously, or illegally paid. The problem with this argument is that it is irrelevant to this matter because there is no allegation by defendant that any of the payments made to plaintiff were made erroneously, wrongfully, or illegally. Each payment was made based upon an independent calculation of the amount owing by the Contracting Officer's Representative. Each payment was based upon a certification that the work covered by plaintiff's monthly invoice was complete and accepted by the Government.

## CONCLUSION

For the reasons stated above, the Court should grant plaintiff's motion for partial summary judgment and dismiss the Government's counterclaim.

Respectfully submitted,

s/____________________________

Timothy H. Power
19229 Sonoma Highway
PMB 246
Sonoma, CA 95476
Tel: (707) 938-7183
Fax: (707) 938-7185
thpower@powerlawoffice.com